IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07-cv-869-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff David Williams brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") terminating his period of disability and ceasing his disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On June 17, 1991, plaintiff filed an application for disability benefits. In a decision rendered on November 3, 1993, an ALJ determined that plaintiff had severe impairments of recurrent peptic ulcer disease and chronic left ankle pain. He found that the plaintiff was unable to perform basic work activities on a sustained basis at any exertional level and, thus, that he was disabled within the meaning of the Social Security Act. (R. 133).

In November 2001, plaintiff completed a continuing disability form stating that there

had been no change in his condition. (R. 184-91). He explained that he had no problems with mobility and that he could bath and dress himself. On September 6, 2002, DDS issued its decision finding that plaintiff's disability had ceased as of September 2002 and terminated his benefits. (R. 194-95). Plaintiff appealed the decision. At a hearing before a hearing officer, plaintiff stated that he continued to be disabled because of arthritis in both hands and his left knee; he further explained that he had stomach problems that caused his weight to keep "going down," and that he got dizzy from his high blood pressure. (R. 204). The hearing officer upheld the cessation determination. (R. 202-10). Plaintiff requested a hearing before an ALJ on November 21, 2003, at which he explained that he still had problems with his legs and knees, he suffered from depression, and had ulcer problems. (R. 228).

      The ALJ held an administrative hearing on May 10, 2005. Plaintiff's representative gave an opening statement in which he explained that plaintiff was "alleging depression, arthritis, migraine headache, ulcers and blacking out from high blood pressure" as his impairments, and that the plaintiff would "testify to all those things." (R. 817). Plaintiff testified that his stomach problems cause him to keep losing weight, and that he took Pepcid to relieve his symptoms. (R. 819). He also said that he had not consumed any alcohol since 2002. Plaintiff testified to his daily activities, which included house and yard work (R. 821), attending church regularly (R. 822), and playing basketball and baseball in his neighborhood (R. 823). When asked what was the biggest reason he could not work anymore, the plaintiff replied that he had bleeding ulcers and experienced a lot of blackouts from his high blood pressure. (R. 823). Plaintiff's representative did not question him.

Two medical experts – Dr. Jack Evans, M.D. and Dr. Nancy Sack, Ph.D. – and a vocational expert – Dr. Randall McDaniel, Ed.D. – also testified at the hearing. Dr. Evans testified that he would place plaintiff's RFC at the light level, and that based on the blood pressure recordings in the record, it would be unusual for plaintiff to experience frequent blackouts. (R. 826). Dr. Sack testified that plaintiff "does have some depressive symptoms and even if he has some mild psychotic symptoms they are not severe enough to meet or equal any of the listings." (R. 827). She also said that she could not rule out that plaintiff's alcohol abuse was continuing because of the unexplained blackouts reported by the plaintiff. (R. 828). Dr. McDaniel testified that someone with the RFC at the modified light level with none to mild mental limitations could perform jobs that exist in significant numbers in the national economy including a flagger with a construction company, short order cook, car wash attendant, and plastic blow molding machine tender. (R. 831-34). Plaintiff's representative did not question any of the expert witnesses.

The ALJ rendered a decision on October 4, 2005. Citing the treatment notes of plaintiff's treating physician and the results of a consultative examination, the ALJ found "there has been a decrease in medical severity based on more than minor changes in symptoms, signs, or laboratory findings associated with the claimant's impairment(s) present at the time of the most recent favorable determination." (R. 34). He further found that this medical improvement was related to the plaintiff's ability to work. The ALJ concluded that the plaintiff continued to have the following severe impairments: status post duodenal ulcer, status post cholecystectomy, status post intestinal obstruction, degenerative arthritis of the

lumbosacral spine, substance abuse, depression, and malingering. (R. 37). Based on these impairments, the ALJ determined that the plaintiff has the current RFC to perform "modified light work" and has the mental RFC as follows:

> Mild limitations in responding appropriately to customers or other members [of] the general public, and in responding appropriately to supervision, none in responding appropriately to co-workers, mild in responding to customary work pressures, none in using judgment in simple one or two step work-related decisions, mild in using judgment in detailed or complex work-related decisions, non in understanding, and carrying out one and two step work-related instructions, mild in understanding, remembering and carrying out detailed or complex instructions, and none in maintaining attention, concentration or pace for periods of at least two hours.

(R. 35-36). Based on this RFC, the ALJ concluded that the plaintiff could not return to his past relevant work, but he could perform jobs that exist in significant numbers in the national economy including a flagger with construction company, short order cook, car wash attendant, and plastic blow molding machine tender. (R. 36). On July 26, 2007, the Appeals Council affirmed the ALJ's decision. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145.

Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff challenges the Commissioner's decision, arguing that the ALJ erred by failing to develop the record fully by not eliciting sufficient testimony from Plaintiff during the hearing regarding plaintiff's subjective allegations of pain and functional limitations. (Plaintiff's brief, p. 2,4). According to plaintiff, the ALJ focused on the issue of whether plaintiff experienced disabling pain, as evidenced by his application of the pain standard to plaintiff's complaints of pain and functional limitations. The Commissioner argues that there was sufficient evidence in the record for the ALJ to rely on in his decision, and that there was no evidentiary gap necessary to justify remand. (Commissioner's brief, p. 6).

The ALJ fails to discharge his duty to develop the record fully when he neglects to elicit clearly relevant and readily available testimony. Brown v. Shalala, 44 F.3d 931, 936 (11th Cir. 1995). However, "even when the hearing [is] 'less than totally satisfactory,' remand is unwarranted unless the claimant can show prejudice." McCloud v. Barnhart, 166 Fed. Appx. 410, 417 (11th Cir. 2006)(unpublished opinion)(quoting Kelley v. Heckler, 761 F.2d 1538, 1540-41 (11th Cir. 1985). "The failure to produce other material does not rise to

the level of a constitutional violation if the ALJ had sufficient evidence on which to base his decision." Id. "This at least requires a showing that the ALJ did not have all of the relevant evident before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).

In the present case, there has been no showing of any prejudice or evidentiary gap resulting from the ALJ's failure to ask plaintiff specific questions concerning his complaints of pain and functional limitations. The record contains a pain questionnaire dated May 27, 2002, and two daily activities questionnaires dated March 1, 2003 (R. 250-54) and May 27, 2002 (R. 255-59), all completed by plaintiff, which contain his accounts of subjective complaints relating to his pain and functional limitations. Further, plaintiff testified before the hearing officer, describing his arthritis and knee pain as well as his daily activities. (R. 204). In addition, the ALJ ordered three consultative exams – one physical and two psychological – that also contain plaintiff's subjective complaints. (See Exhibits B-44, B-45 & B-82). The ALJ questioned the plaintiff concerning his impairments, his medications, and his daily activities, and thus had the opportunity to evaluate his demeanor and credibility.

Given the ALJ's reliance, in his application of the pain standard, on plaintiff's testimony concerning playing baseball and basketball and doing house and yard work– not to mention plaintiff's diagnosis of malingering and his inconsistent testimony as to his use of alcohol – there is no reason to conclude that further testimony concerning plaintiff's subjective complaints would have had any effect on the ALJ's ultimate determination. This

is not a case in which the ALJ failed to elicit testimony from an unrepresented plaintiff who did not have the benefit of further questioning by a representative. See Brown, 44 F.3d 93. Instead, plaintiff's representative was present and declined to question the plaintiff and inquire further about his subjective complaints.

Thus, the ALJ had sufficient evidence before him regarding plaintiff's allegations of disabling pain and functional limitations, and the record also contains evidence of plaintiff's daily activities. These provide substantial support for the ALJ's decision to discredit the plaintiff's complaints.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, the decision is due to be AFFIRMED. A separate judgment will be entered.

Done, this 17th day of August, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE